IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00299-PAB-BNB

ERIC MARSHALL,

Plaintiff,

v.

KEVIN MILYARD, Warden,
FLLOYD WAID, West CC Manager,
M. NEGLEY, Captain/Shift Commander,
STEVEN BADE, Lt.,
JAMES FRYER, Correctional Officer, and
ANTHONY DECESARO, Grievance Officer,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the following motions filed on September 15, 2008:

1. **Defendant Decesaro's Motion to Dismiss Pursuant to Rule 12(b)(6)** [Doc. # 22]

(the "Decesaro Motion").

2. **Motion to Dismiss Pursuant to Rule 12(b)(6)** filed by defendants Milyard, Waid,

Negley, Bade, and Fryer [Doc. # 23] ("Sterling Defendants' Motion").

I Respectfully RECOMMEND that the Motions be GRANTED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as an advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Crowley County Correctional Facility. He filed his Amended Prisoner Complaint on June 26, 2008 (the "Complaint") [Doc. #12]. At all times pertinent to the allegations of the Complaint, the plaintiff was incarcerated at Sterling Correctional Facility. The Complaint contains the following allegations:

1. On June 11, 2007, the plaintiff cleared his cell during dayroom time. All of his personal property was in front of the cell. While he was in the shower, Lieutenant Bade told him to lock down in his cell. *Complaint*, p. 4. The plaintiff told Bade that reasonable notice of the lockdown was required pursuant to the Code of Penal Discipline ("COPD"). Id. at p. 5. Bade grabbed the plaintiff by his upper arm. The plaintiff told Bade "do not put your hands on me." Bade cuffed the plaintiff with no problem and escorted him to the shift commander, Captain Negley. Id. On the way, Bade was "putting his fingernails deep into th[e] plaintiff's right arm." Id.

2

2.   At Bade's request, Captain Negley removed the plaintiff from the general population and placed him in segregation.  The plaintiff spent fourteen days in segregation without being given a "24-hour review per administrative regulation."  On June 23, 2007, the plaintiff received notice that COPD charges had been initiated for "advocating or creating a facility disruption" and "disobeying a lawful order."  Bade was the initiating employee.  A hearing was scheduled for June 26, 2007.  Id.

3.   On June 25, 2007, the plaintiff was released from segregation.  Id.  Bade saw the plaintiff coming from the prison gym and wrote him another COPD charge for "unauthorized absence."  Id. at p. 6.

4.   On June 26, 2007, a COPD hearing was held on the charges of "advocating or creating a facility disruption" and "disobeying a lawful order."  The charges were dismissed because Lieutenant Lawson testified that no instructions had been given to lock down the plaintiff.  Id.

5.   On July 16, 2007, the plaintiff was found guilty of "unauthorized absence."  To assure the conviction, Bade used a lower ranking staff official to give false statements which led to the finding of guilt.  The conviction resulted in "10 days loss of privileges and 8 days loss of good time."  Id.  Bade took these actions "to retaliate against this plaintiff for his personal satisfaction after Steven Bade was informed that the charges of advocating or creating a facility disruption and disobeying a lawful order would be dismissed."  Id.

6.   The plaintiff informed Warden Milyard of Bade's assault upon him by letter on June 23, 2007.  The plaintiff asked Milyard to have the incident investigated.  Milyard did not respond to the plaintiff's letter.  Id.

7.   An "order to have this matter investigated was given to" Major Waid.  Id.  On July 25, 2007, Waid sent a letter to the plaintiff which failed to state that Bade was not authorized to lock down the plaintiff.  Id. at p. 7.

8.   Correctional Officer James Fryer was in charge of securing the plaintiff's personal property on June 11, 2007, while the plaintiff was removed from the unit and taken to Negley's office.  Fryer failed to properly secure the property and it was stolen.  Id.  The property was never recovered, and the plaintiff has never received any compensation for it.  Id. at p. 8.

9.   Anthony Decesaro, the Step Three Grievance Officer, failed to respond to the plaintiff's Step Three grievance.  Id.

The Complaint asserts four claims.  Claim One alleges that Bade used excessive force in violation of the Eighth Amendment.  Id. at pp. 8-9.  Claim Two alleges that Bade retaliated against the plaintiff.  Id. at pp. 9-10.  Claim Three alleges that the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment was violated when Bade used excessive force and injured his arm and when Fryer caused the plaintiff's property to be lost or stolen.  Id. at pp. 10-11.  Claim Four alleges that Decesaro intentionally failed to respond to the plaintiff's Step Three grievance to prevent the plaintiff from filing this Complaint.  Id. at pp. 11-12.[1]  The plaintiff seeks compensatory and punitive damages from each defendant.  Id. at p. 14.

## III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

---

[1]To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

## A.  Claim One

Claim One alleges that Bade used excessive force in violation of the Eighth Amendment.[2]

The defendants assert that Claim One fails to state a claim upon which relief can be granted.

*Motion*, pp. 6-8.

The United States Constitution dictates that a person shall not be subjected to "cruel and

unusual punishments." U.S. Const. amend. VIII.  The language of the Eighth Amendment

indicates "an intention to limit the power of those entrusted with the criminal-law function of

government." Whitely v. Albers, 475 U.S. 312, 318, (1986) (quoting Ingram v. Wright, 430 U.S.

651, 664, (1977)).

Although the Eighth Amendment limits the use of force by prison officials, a certain

degree of force may be necessary in a prison setting to maintain the discipline, order, and safety

of all the prisoners.  The Eighth Amendment's restriction, however, does assure a prisoner's

"right to be free from the terror of instant and unexpected death" at the hands of his keepers.

Northington v. Jackson, 973 F.2d 1518, 1524 (1992) (quoting Burton v. Livingston, 791 F.2d 97,

100 (8th Cir. 1986)).  Accordingly, "whenever prison officials stand accused of using excessive

physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial

---

[2]The defendants construe Claim One as against several other defendants.  The allegations
of the Complaint do not support that construction.

inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992); <u>see</u> <u>Whitely</u> 475 U.S. at 320-21 (1986).

The plaintiff alleges that Bade grabbed his upper arm; cuffed him; and put "his fingernails deep into th[e] plaintiff's right arm." *Complaint*, pp. 5, 9. The plaintiff states that a "medical report was done and filed which is consistent with the plaintiff's statement that Lieutenant Steven Bade did injure this plaintiff and used excessive force." <u>Id.</u> at p. 5. The plaintiff attached the medical report to his Complaint. <u>Id.</u> at p. 16. The medical report lists the plaintiff's injuries as a 3 x 5 centimeter bruise to the right forearm and a 4 x 5 centimeter reddened area to the back of the arm.

The Supreme Court has made clear that "[d]e minimis applications of force are necessarily excluded from the cruel and unusual punishment inquiry." <u>Northington</u>, 973 F.2d at 1524. In other words, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Id.</u> (quoting <u>Johnson v.</u> <u>Glick</u>, 481 F.2d 1028, 1033 (2d Cir.)); <u>see also</u> <u>Hudson</u>, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'"). If the force used is so minor that any reasonable or unreasonable motive for applying it is justified, the injuries do not merit a cause of action. The law recognizes that a certain amount of force may be necessary and may be applied.

The plaintiff's injury was de minimis. The Sterling Defendants' Motion should be granted insofar as it seeks dismissal of Claim One.

6

**B.   Claim Two**

In Claim Two, the plaintiff alleges that Bade retaliated against him.  Specifically, the plaintiff alleges that on June 25, 2007, he was released from segregation; Bade saw him leaving the prison gym and issued a COPD charge for "unauthorized absence"; on July 16, 2007, the plaintiff was found guilty of "unauthorized absence"; the conviction resulted in "10 days loss of privileges and 8 days loss of good time"; Bade used a lower ranking staff official to give false statements which led to the guilty charge; and Bade took these actions "to retaliate against this plaintiff for his personal satisfaction after Steven Bade was informed that the charges of advocating or creating a facility disruption and disobeying a lawful order would be dismissed."

The defendants argue that Claim Two should be dismissed under Heck v. Humphrey, 512 U.S. 477 (1994), because the plaintiff did not obtain a favorable termination of his conviction for unauthorized absence prior to filing this action.  *Sterling Defendants' Motion*, pp. 8-12.

In Heck, 512 U.S. at 487, the Supreme Court held that "[w]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  Id. at 487.  The Court noted that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."  Id. at 481.

The holding in Heck applies to challenges to prison disciplinary convictions when the conviction affects the inmate's good time credits and, as a result, the duration of his confinement.  Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997).

In Muhammad, the Court noted that prison disciplinary proceedings do not "raise any implication about the validity of the underlying conviction," but such proceedings "may affect the duration of time to be served by bearing on the award or revocation of good-time credits." 540 U.S. at 754.  The Court found that the inmate's section 1983 suit was not barred by Heck because the lower court had "expressly found or assumed that no good-time credits were eliminated" by the action in question.  Id.  "His § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence."  Id. at 754-55.

In Balisok, a state prisoner brought a claim under section 1983 challenging the procedures used in a disciplinary proceeding that resulted in the deprivation of good time credits. Although the prisoner's amended complaint did not expressly seek restoration of the good time credits, 520 U.S. at 644, the Court nevertheless found that "respondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."  Id. at 648.

Here, the plaintiff alleges that Bade retaliated against him by falsely charging him with an unauthorized absence. *Complaint*, p. 6.  He further alleges that in order to assure the plaintiff's  conviction at the disciplinary hearing, Bade had a lower ranking staff member "give

8

false statements," which "led to the guilty charge of a class II Rule 30 unauthorized absence" and caused him "8 days loss of good time." Id.  These allegations necessarily imply the invalidity of the punishment imposed.  The plaintiff has not alleged that this disciplinary conviction has been invalidated.  Accordingly, Claim Two is not cognizable under section 1983; it must be asserted in a habeas petition after the plaintiff exhausts all of his available state remedies.  See Janke v. Price, 124 F.3d 216, 1997 WL 537962 at *5 (10th Cir. Sept. 2, 1997).

The Sterling Defendants' Motion should be granted insofar as it seeks dismissal without prejudice of Claim Two.

## C.  Claim Three

Claim Three alleges that the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment was violated when Bade used excessive force and injured his arm and when Fryer caused the plaintiff's property to be lost or stolen.  The claim for excessive force against Bade is redundant of Claim One, and should be dismissed.

The allegations of Claim Three against Fryer also fail.  The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment violation.  Id. at 298.  To satisfy the subjective component, plaintiffs must

9

demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious

harm.  Farmer, 511 U.S. at 834.

In his description of the nature of the case, the plaintiff states that "all of this property

was stolen because of C/O James Fryer's negligence in failing to secure this plaintiff's

property."  *Complaint* p. 7.

"Deliberate indifference requires more than a showing of simple or heightened

negligence."  Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003) (citing Board of County

Commrs. v. Brown, 520 U.S. 397, 407-10 (1997)).  Insofar as the plaintiff bases this claim on

negligence, the claim is without merit.

The plaintiff also alleges that Fryer "deliberately allowed this plaintiff's property to be

lost or stolen."  *Complaint*, p. 11.  Assuming Fryer's actions were deliberate, the plaintiff has not

alleged a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment

violation, nor has he alleged that Fryer was deliberately indifferent to a substantial risk of serious

harm.[3]

The Sterling Defendants' Motion should be granted insofar as it seeks dismissal of Claim

Three.

### D.   Claim Four

Claim Four alleges that Decesaro intentionally failed to respond to the plaintiff's Step

Three grievance in order to prevent the plaintiff from filing his Complaint.  Defendant Decesaro

---

[3]I further note that, although the plaintiff brings this claim under the Eighth Amendment, it would also fail under a due process analysis.  The circuit court has recognized that the taking of an inmate's property does not implicate the due process clause where an adequate state post-deprivation remedy is available, and that Colorado has provided such a remedy in section 24-10-106(1)(b).  Freeman v. Dept. of Corrections, 949 F.2d 360, 361-62 (10th Cir. 1991).

moves to dismiss the claim against him on the basis that he is entitled to qualified immunity. *Decesaro Motion*, pp. 9-11.

Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

When analyzing the issue of qualified immunity, the court must determine whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right and whether the right was clearly established at the time of the violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). Accordingly, I look to the Complaint's allegations to determine if the plaintiff has sufficiently alleged a violation of his constitutional rights.  See Pearson v. Callahan, 129 S.Ct. 808, 818 (2009) (holding that courts have discretion in deciding which of the two prongs should be addressed first).

11

The plaintiff does not accuse Decesaro of violating any federal law or constitutional provision.  However, it appears that the plaintiff is attempting to bring a claim against Decesaro for denying access to the courts in violation of the First Amendment.

An inmate alleging denial of access to the courts must allege an actual injury.  Lewis v. Casey, 518 U.S. 343, 349 (1996).  The plaintiff alleges that Decesaro intentionally failed to answer his Step Three grievance in order to prevent the plaintiff from filing this action.  However, the plaintiff has been able to file this action.  Therefore, the plaintiff did not suffer an actual injury from Decesaro's failure to respond to his Step Three grievance.

The Decesaro Motion should be granted and Claim Four should be dismissed.

### E.   Remaining Defendants

The plaintiff does not assert any claims against defendants Milyard, Waid, and Negley, but his description of the Nature of the Case contains allegations against them.  The defendants argue that any claim against these defendants should be dismissed because the plaintiff has failed to allege that they personally participated in violating the plaintiff's constitutional rights. *Motion*, pp. 4-6.

### 1.   Captain Negley

The plaintiff alleges that Negley violated prison policy "by refusing to grant this plaintiff a 24-hour review after being removed from general population and placed in segregation." *Complaint*, p. 5.  The plaintiff does not allege that Negley's actions resulted in a violation of any particular constitutional right.

Construing the Complaint liberally, the plaintiff may be asserting that Negley violated his due process rights.  The Fourteenth Amendment guarantees due process when a person may be

12

deprived of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'"  Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), aff'd, 520 U.S. 143 (1997).  Thus, before determining whether a plaintiff's procedural or substantive due process rights have been violated, the court must determine whether the plaintiff has a liberty interest.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466 (1983), overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

State-created liberty interests are found only under limited circumstances:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84.[4]

---

[4]In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest.  The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement."  515 U.S. at 480-81.  The Court instead returned to the due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976) and Wolff v. McDonnell, 418 U.S. 539 (1974).  Those principles focus on the nature of the deprivation instead of the language of a particular regulation.  Sandin, 515 U.S. at 481.

The Complaint does not contain any factual allegations to support a reasonable inference that plaintiff's placement in administrative segregation imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life.  The Supreme Court has "found no liberty interest in protecting against a 30-day assignment to segregated confinement because it did not present a dramatic departure from the basic conditions of the inmate's sentence." Wilkinson, 545 U.S. at 223 (internal quotations omitted) (citing Sandin, 515 U.S. at 485).  The Court noted that "inmates in the general population experienced significant amounts of lockdown time and that the degree of confinement in disciplinary segregation was not excessive."  Id. (internal quotations omitted) (citing Sandin, 515 U.S. at 486).  The Court did not find "the short duration of segregation to work a major disruption in the inmate's environment." Id. (citing Sandin, 515 U.S. at 486).  See also Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir.1994) (inmates are not constitutionally entitled to a particular classification or degree of liberty while incarcerated, and generally placement in administrative segregation does not deprive an inmate of liberty).

The plaintiff's confinement in administrative segregation does not violate any liberty interest which arises directly from the due process clause, and the plaintiff has failed to allege facts which demonstrate, or from which it can be inferred, that any such interest has been created by the state.  Accordingly, the plaintiff has failed to show a constitutionally cognizable liberty interest violated by his placement in administrative segregation.  The plaintiff's claim against Negley fails to state a claim upon which relief can be granted and should be dismissed.

## 2.  Warden Milyard and Major Waid

14

The plaintiff alleges that he wrote Milyard a letter informing him of the "assault" by Lieutenant Bade, but Milyard failed to respond and failed to have the incident investigated. *Complaint*, p. 6.  The plaintiff alleges that Waid investigated the incident but failed to include in his letter to the plaintiff a statement acknowledging that Bade was not authorized to place the plaintiff in lockdown.  Id. at p. 7.  He further alleges that "Waid did not act upon Steven Bade."

An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation.  McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).  Respondeat superior is not within the purview of section 1983 liability.  Id.  In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976).  Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official.  Id.

The plaintiff has provided only conclusory allegations that Milyard is liable because he was in a position of authority; he was notified of the incident; and he did not order an investigation of the incident.  The plaintiff alleges only that Waid is liable because he "did not act upon Steven Bade."  Those allegations are not sufficient to show that Milyard and Waid were directly responsible for violating the plaintiff's constitutional rights.

## IV.  CONCLUSION

I respectfully RECOMMEND that Defendant Decesaro's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. #22] be GRANTED and that Claim Four be DISMISSED WITH PREJUDICE.

I FURTHER RECOMMENDED that the Motion to Dismiss Pursuant to Rule 12(b)(6)[Doc. # 23] be GRANTED and that Claims One and Three be DISMISSED WITH PREJUDICE and Claim Two be DISMISSED WITHOUT PREJUDICE.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated September 18, 2009.

BY THE COURT:

 s/ Boyd N. Boland_____
United States Magistrate Judge